COMMONWEALTH *vs.* CARL E. BOOKER.

Suffolk.   March 2, 1982. — June 8, 1982.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Evidence,* Relevancy and materiality, Consciousness of guilt, Other offense.

At the trial of an armed robbery indictment the judge did not abuse her discretion in admitting evidence of the defendant's flight and conceal-ment at the approach of the police, as circumstantial evidence of his consciousness of guilt of the armed robbery offense, although the de-fendant had been charged with another offense for which a default warrant was outstanding.  [469-472]

COMPLAINTS received and sworn to in the Roxbury Divi-sion of the District Court Department on July 30, 1979.

Upon the defendant's waiver of indictment, the cases were tried in the Superior Court Department before *Fine,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Brownlow M. Speer* for the defendant.

*Robert A. Marra, Jr.,* Legal Assistant to the District At-torney (*Michael J. Traft,* Assistant District Attorney, with him) for the Commonwealth.

LIACOS, J.  The defendant was tried before a jury in the Superior Court and convicted of two counts of armed rob-bery.  He was sentenced to concurrent terms of from seven to ten years at the Massachusetts Correctional Institution at Walpole.  The defendant appealed, and this court allowed his application for direct appellate review.  We affirm.

The sole issue presented by this appeal is whether the trial judge abused her discretion in admitting evidence of the de-fendant's flight and concealment at the approach of the police, as circumstantial evidence of his consciousness of

guilt.  The defendant argues that the consciousness of guilt evidence was not relevant to the crime charged and, if it were relevant, it should have been excluded because the probative value of the evidence was substantially out- weighed by the prejudicial effect on the defendant.

There was evidence of the following facts.  Joseph Har- vard was the owner and operator of a "fish and chip" busi- ness that was conducted from a "step-in" van.  On the even- ing of July 27, 1979, Harvard and his part-time assistant Andrian Colvin were doing business from the van, parked in its customary place in Roxbury near a lighted baseball field. After the evening's baseball game, as the pair was closing up the van and preparing to leave, a man approached the van, pulled a sawed-off shotgun from under his raincoat, and demanded all of their money.  At this time, Harvard was seated in the driver's seat of the van facing the passenger side, while Colvin was standing inside the van near the door on the passenger side facing Harvard.  The baseball field lights were still on, as was the van ceiling light over the driv- er's seat.

After handing over all their money, Harvard and Colvin were ordered out of the van by the man and told to run away.  The pair went to Colvin's apartment where Colvin called the police.  When the police arrived, both victims gave detailed descriptions of the assailant.  The next day, July 28, the victims went to the police station and, after looking through a few volumes of photographs, identified the defendant as the perpetrator of the crime.  Later the same day, Harvard and Colvin separately picked a picture of the defendant from a group of eight to fourteen photo- graphs.[1]

The parties stipulated at trial that at 10 A.M. on July 28 the defendant was arrested, not on the charges in this case

---

[1] Both Harvard and Colvin identified the defendant in a lineup, but this identification evidence was suppressed prior to trial.  On cross-examina- tion of Harvard by defense counsel, however, this identification was dis- closed.

but on a default warrant. The prosecutor sought to elicit testimony on cross-examination of the defendant's wife, Brenda Booker, concerning whether the defendant was hiding when the police came to his home to arrest him. The evidence was excluded at that time. After the defense rested, the Commonwealth again requested that the judge allow Brenda Booker's testimony regarding the defendant's actions when the police came to his home the morning after the crime. The prosecutor argued that, although a default warrant for another crime was outstanding, the defendant's attempt to conceal himself from the police was evidence of consciousness of guilt of his most recent crime.

The defendant argued against the admission of the testimony, contending that its probative value was minimal in light of the outstanding default warrant of which the defendant had knowledge[2] and that the testimony, in balance, was highly prejudicial to his case. The judge allowed the Commonwealth's motion.

Mrs. Booker testified on cross-examination that when the police officers arrived at the house, her husband ran into a closet. On redirect, the defense again established that the defendant was, at the time of his arrest, in default on an outstanding warrant. The parties stipulated that the date of the default was April 24, 1978.

During closing arguments, the defense counsel cautioned the jury against placing too much weight on the defendant's attempt to hide when the police came to his house. The prosecutor did not mention the particular evidence during his closing. The judge charged the jury without referring to that evidence or instructing the jury on consciousness of guilt. There was no objection to the charge as given.

The defendant claims that the evidence of his concealment from the police was irrelevant and prejudicial. He argues that this conduct did not establish consciousness of guilt of the crime for which he was standing trial; also, the

---

[2] The defendant did not testify. Hence, there was no direct testimony as to his knowledge of the outstanding warrant.

effect of this evidence, the defendant says, was solely to show that he was in difficulty with the law on other, unrelated, criminal charges.

The defendant does not contest the general principle that flight of one accused of a crime is admissible as some evidence of consciousness of guilt. See, e.g., *Commonwealth* v. *Geagan*, 339 Mass. 487, 512, cert. denied, 361 U.S. 895 (1959). Evidence of flight indicates consciousness of guilt and is probative of the defendant's guilty state of mind. See *Commonwealth* v. *Haney*, 358 Mass. 304, 306 (1970). The defendant, however, contends that evidence of flight in his case has little or no relevance because he might well have been hiding from the police based on the crime charged in the outstanding warrant rather than for the crime for which he was on trial. The defendant knew of the prior charge against him because he was previously arraigned on it. There was no evidence that the defendant knew he was a suspect for the armed robbery in the instant case.

"It is a familiar tenet of Massachusetts law that the 'relevancy of testimony depends upon the question, whether it has a rational tendency to prove the issues made by the pleadings or other incidental material issues developed in the course of the trial.' *Commonwealth* v. *Durkin*, 257 Mass. 426, 427-428 (1926). *Commonwealth* v. *Ross*, 361 Mass. 665, 679 (1972) [judgment vacated, 410 U.S. 901, aff'd on rehearing, 363 Mass. 665, cert. denied, 414 U.S. 1080 (1973) (with dissents), habeas corpus granted sub nom. *Ross* v. *Ristaino*, 388 F. Supp. 99 (D. Mass.), aff'd, 508 F.2d 754 (1st Cir. 1974), rev'd, 424 U.S. 589 (1976)]." *Commonwealth* v. *Fillippini*, 1 Mass. App. Ct. 606, 611 (1973). See *Commonwealth* v. *Chretien*, 383 Mass. 123, 135 (1981), and cases cited (evidence relevant if it tends to prove some issue in case); Proposed Mass. R. Evid. 401 (July, 1980). Whether evidence is relevant in any particular instance and whether the evidence is so inflammatory in nature as to outweigh its probative value and thus preclude its admission are questions addressed to the sound discretion of the trial judge. *Commonwealth* v. *Chretien*, *supra* at 135-136.

*Green* v. *Richmond,* 369 Mass. 47, 59-60 (1975). *Commonwealth* v. *D'Agostino,* 344 Mass. 276, 279, cert. denied, 371 U.S. 852 (1962). The test of relevancy is "a matter on which the opinion of the trial judge will be accepted on review except for palpable error." *Commonwealth* v. *Young,* 382 Mass. 448, 463 (1981). See *Commonwealth* v. *D'Ambra,* 357 Mass. 260, 264 (1970).

The judge properly could conclude that the evidence of the defendant's flight upon the police's arrival at his home was relevant to show consciousness of guilt. See generally *Commonwealth* v. *Toney,* 385 Mass. 575, 584-585 (1982) (discussing basis of relevancy of consciousness of guilt evidence). "While proof of mere consciousness of guilt alone may be insufficient to convict of crime, see *Commonwealth* v. *Montecalvo* [367 Mass. 46, 52 (1975)], evidence of such a state of mind when coupled with other probable inferences, may be sufficient to amass the quantum of proof necessary to prove guilt. See *Commonwealth* v. *Best,* 381 Mass. 472, 483 (1980)." *Commonwealth* v. *Porter,* 384 Mass. 647, 653 (1981). The jury could have found that the defendant sought to hide when the police arrived at his home because of his consciousness of guilt of the armed robbery that occurred the night before.

The fact that the defendant had lived at the same address for some fifteen months subsequent to the issuance of the default warrant could also have been considered by the jury in their determination whether his concealment was precipitated by that warrant or by the robbery on the night prior to his arrest. Whether a flight from the police shows consciousness of guilt of the offense on trial when the defendant is charged with another offense is a question of fact for the jury going to the weight of the evidence, rather than a question of law for the judge going to the admissibility of the evidence. See *Commonwealth* v. *Madeiros,* 255 Mass. 304, 314 (1926). That there may have been other reasons for the flight presents a question for the jury in considering the probability that the defendant fled because of a consciousness of guilt of the crime charged in the indictments and

for which he was on trial. The jury must consider this fact like any other and determine what was the cause of the flight. Cf. *Commonwealth* v. *Toney, supra; Commonwealth* v. *Madeiros, supra.*

Although the evidence explaining a possible motive for the defendant's flight, other than consciousness of guilt of the crime charged in the instant case, tended possibly to prejudice the defendant by showing that he was involved in other criminal activity, this factor does not render the flight evidence inadmissible. See *Commonwealth* v. *Geagan, supra; Commonwealth* v. *Green,* 302 Mass. 547, 552 (1939). Evidence that tends to show consciousness of guilt is relevant and is not rendered inadmissible simply because it may indicate that the defendant has committed another offense. *Commonwealth* v. *Roberts,* 378 Mass. 116, 125-126 (1979). *Commonwealth* v. *Gilday,* 367 Mass. 474 (1975).

The defendant's reliance on *United States* v. *Myers,* 550 F.2d 1036 (5th Cir. 1977), aff'd after remand, 572 F.2d 506 (5th Cir.), cert. denied, 439 U.S. 847 (1978), is misplaced. In *Myers,* the defendant committed two robberies within two months and attempted to flee from Federal agents when arrested shortly after the second robbery. The court held inadmissible the evidence of the defendant's flight at his trial for the *first* robbery. The instant case is factually distinguishable from *Myers* in that the defendant was on trial for the more recent of his alleged crimes. The police arrested the defendant less than twenty-four hours after the robbery of Harvard and Colvin. The jury could have drawn a logical inference that the defendant's concealment from the police was to avoid apprehension for that robbery. This is especially true considering that the outstanding warrant in this case was more than two years old.

Concluding that the evidence of the defendant's flight was properly before the jury, we find no error in the defendant's trial. "If the defendant wanted the judge to provide limiting or curative instructions, he should have made the proper request. Ordinarily judges are not required, sua

sponte, to instruct the juries as to the purposes for which evidence is offered at trial." *Commonwealth* v. *Roberts, supra* at 126. But see *Commonwealth* v. *Toney, supra* at 584-585.

*Judgments affirmed.*