COMMONWEALTH *vs.* ARTHUR RODERICK.

Norfolk. December 2, 1991. - February 18, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Assault with Intent to Rape. Practice, Criminal,* Instructions to jury, Examination of jurors. *Evidence,* Demonstration. *Constitutional Law,* Confrontation of witnesses. *Witness,* Credibility.

At the trial of indictments for assault with intent to rape, indecent assault and battery on a mentally retarded person, and open and gross lewdness, there was no error in the judge's allowing the victim, who did not testify, to be present briefly in the courtroom, where the victim's appearance and conduct were relevant to the issues at trial, including the issue whether the defendant would have known that the victim was mentally retarded. [819-820]

At a criminal trial, the judge properly instructed the jury with respect to the credibility of the witnesses. [820-821]

There was no merit to the defendant's claim of error in the jury empanelment process at a criminal trial, where the defendant had agreed to the procedure the judge proposed. [821]

INDICTMENT found and returned in the Superior Court Department on September 28, 1989.

The case was tried before *Robert A. Mulligan,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Benjamin H. Keehn,* Committee for Public Counsel Services, for the defendant.

*James F. Lang,* Assistant District Attorney, for the Commonwealth.

WILKINS, J. The defendant appeals from his conviction of assault with intent to rape. The jury found him not guilty of indecent assault and battery on a mentally retarded person and of open and gross lewdness. We transferred the appeal to this court and now affirm the conviction.

In June, 1989, the defendant was employed at an intermediate care facility in Wellesley, a residential group home for retarded adults operated under the auspices of the Wrentham State School. The victim, at that time a resident of the group home and in her middle twenties, had been severely retarded since birth. She could not hear or speak. She could communicate to some degree by gestures and could make vocal sounds.

In the early afternoon of June 5, 1989, for reasons that need not concern us, the defendant and the victim were alone at the residential home. At approximately 1:15 P.M., Janis Belcher, the victim's case manager at the day program the victim usually attended, telephoned the defendant and obtained his approval for a visit to the group home by Belcher, two fellow staff members, and several clients.

About 2 P.M., the group arrived at the Wellesley facility. Belcher and one of her clients entered the home. She called "hello" in the kitchen and received no response. After moving to the living room, Belcher heard hooting from the back of the house, a sound that the victim sometimes made. Belcher walked toward the back of the house, where she knew the victim's bedroom was located, again calling "hello." There was still no response, but the hooting continued. She found the defendant and the victim in a bedroom. The victim was lying face up near the foot of a bed, her legs bent and spread apart, and her shorts and underpants at the lower part of her legs. The defendant was standing with his back to the door, leaning over the victim, and moving his hips back and forth toward the victim. Belcher asked the defendant what he was doing. When he partially turned around, Belcher noticed that his pants were open and his penis was exposed.

We need not set forth other evidence tending to prove the defendant's guilt, including admissions and evidence that the defendant fled the State immediately after this incident. The appellate issues that the defendant raises can be resolved with this brief factual recitation.

1. The judge did not abuse his discretion, nor deny the defendant his constitutional right to a fair trial or to confront a witness, when he allowed the victim to sit in the spectator section of the courtroom for several minutes at the beginning of the second day of the trial. The defendant objected in advance to the victim's presence in the courtroom. The judge considered the possible relevance of her presence, permitted her brief appearance, and, when she appeared, gave thorough instructions to the jury that they not let themselves be prejudiced against the defendant by the victim's appearance and conduct. We generally accept such instructions as an adequate safeguard against the risk of undue prejudice. See *Commonwealth* v. *Andrews*, 403 Mass. 441, 450, 451 (1988).

The victim's presence and conduct in the courtroom were relevant to the issue whether the defendant would have known that the victim was mentally retarded, an element of one of the crimes of which the defendant was found not guilty. The defendant did not contest this issue at trial. The hooting sound that the victim could make also was relevant as tending to explain why the defendant did not hear Belcher's calls after she entered the house and thus why Belcher found him in an incriminating position. From comments in the transcript, it appears that the victim made certain noises in the courtroom but may well not have made any loud hooting sound.

We have consistently left to the sound discretion of the trial judge the determination whether relevant evidence that may also have an unfairly prejudicial impact on a jury should be admitted. See *Commonwealth* v. *Blake*, 409 Mass. 146, 160 (1991); *Commonwealth* v. *Booker*, 386 Mass. 466, 469-470 (1982). The fact that evidence is relevant to an issue that the opponent of its admission concedes to does not make the evidence inadmissible (*Commonwealth* v. *Todd*, 394 Mass. 791, 796 [1985]), although such a concession might be a factor in assessing the propriety of a trial judge's discretionary admission of arguably inflammatory evidence. The

defendant has not shown that the judge abused his discretion in permitting the victim to appear briefly in the courtroom.

The defendant's restatement of his objection to the victim's presence in the courtroom as an unconstitutional denial of a fair trial adds nothing substantive to his claim. An assertion of a denial of due process and of a fair trial must be supported by a showing of inherent or actual prejudice at least as great as that which must be shown to warrant reversal of a judge's discretionary decision on the common law principles we have just discussed. See *Holbrook* v. *Flynn,* 475 U.S. 560, 572 (1986).

The defendant's argument that he was denied his rights of confrontation, guaranteed by the State and Federal Constitutions, falters, if it does not totally fail, simply because the victim did not testify against the defendant. The essential concern of constitutional rights of confrontation is that a defendant have the opportunity to face and cross-examine witnesses against him. See *Commonwealth* v. *Funches,* 379 Mass. 283, 292 (1979). Here, we are concerned with the jury's opportunity to use their physical senses to see the victim and to hear whatever sounds she might make. The victim in no way expressed an opinion or stated a fact bearing on the defendant's guilt. There was no testimony from the victim at all but only demonstrative evidence. Nor was there any improper extraneous influence on the jury because of the victim's brief appearance. Compare *Norris* v. *Risley,* 918 F.2d 828, 834 (9th Cir. 1990) (courtroom spectators permitted to wear buttons stating "Women Against Rape" denied defendant fair trial).

2. The defendant objected to that portion of the judge's jury charge advising that, in evaluating the credibility of a witness, the jury could consider "the interest or lack of interest that a particular witness may have in the outcome of the trial." The defendant contends that the judge was improperly commenting on the defendant's credibility because he was the only person who testified who had an interest in the outcome of his trial.

The judge's challenged instruction was included within his listing of items that the jury could consider in deciding credibility, such as the witness's demeanor, frankness, reasonableness, accuracy of recollection, motives, and demonstrated bias. The challenged language was not focused on the defendant's interest in the outcome of the case, nor was it limited to the treatment that the jury should give to the defendant's testimony, a practice that could present problems. See *United States* v. *Dwyer*, 843 F.2d 60, 62-63 (1st Cir. 1988). The charge was a general comment, stated an obvious point, and did so only once. We see no error in such an instruction, nor did the Appeals Court recently in *Commonwealth* v. *Ramos*, 31 Mass. App. Ct. 362, 368-369 (1991). See *Commonwealth* v. *Avery*, 14 Mass. App. Ct. 137, 142 (1982).

3. The defendant has no ground to complain that the judge used the jury empanelment process that is described in *Commonwealth* v. *Foley*, 402 Mass. 703 (1988) (members of venire who answered preliminary questions so as to indicate possible grounds for disqualification placed in special reserve status). In this case, unlike the *Foley* case, the defendant agreed to the procedure the judge proposed.

*Judgment affirmed.*